**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

HIGHLAND PROPERTIES, A Georgia Joint    :
Venture, and HOME BUILDERS ASSOCIATION :
OF ALBANY & SOUTHWEST GA., INC.,     :
                                   :
      Plaintiffs,                   :      1:00-CV-198-2 (WLS)
                                     :
v.                                       :
                                     :
LEE COUNTY UTILITIES AUTHORITY,     :
                                     :
      Defendant.                  :
_____:

**ORDER**

On November 9, 2000, Plaintiffs Highland Properties and Home Builders Association of Albany & Southwest, Ga., Inc. filed a complaint against Defendant Lee County Utilities Authority seeking declaratory, injunctive, monetary and equitable relief for effecting a taking in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Takings Clause of the Constitution of the State of Georgia, in addition to a separate condemnation claim under Georgia law.

The state constitutional and condemnation claims having been abandoned by mutual agreement of the parties, the sole issue remaining before the Court is whether Defendant Lee County Utilities Authority violated the Equal Protection Clause of the Fourteenth Amendment in establishing water and sewer tap fees in connection with its operation of the water and sewer system in Lee County which resulted in a taking of Plaintiff's property interest. (*See* Docs. 51, 52).

The parties having agreed to a non-jury trial, the above referenced matter was tried by this Court on May 12, 2004. (Doc. No. 49). The parties were to submit Proposed Findings of Fact and Conclusions of Law by Thursday, May 27, 2004. *Id.* On May 27, 2004, Plaintiffs filed "Notice of Filing of Original Discovery." (Doc. No. 51). On June 2, 2004, the parties filed their

Proposed Findings of Fact and Conclusions of Law.  (Doc. Nos. 53, 54).  After considering the evidence, the following will constitute the Court's Findings of Fact and Conclusions of Law as required by Fed. R. Civ. Pro. R. 52.

## JURISDICTION and VENUE

All named parties are properly before the Court and there is no issue with respect to this Court's subject matter jurisdiction or venue.

## FINDINGS of FACT

1. Plaintiff Home Builders Association of Albany & Southwest Ga., Inc. ("Home Builders") is a Georgia trade organization that supports legislative efforts, community efforts and different aspects of the building business.  (Tr. 11).

2. Plaintiff Highland Properties ("Highland Properties") is a Georgia joint venture with one undivided one-half interest owned by Jowers Construction Company, and the other undivided one-half interest owned by George McIntosh ("McIntosh") and Langdon Flowers.   (Tr. 6, 12-15).

3. Jowers Construction Company is owned by Tommy Jowers ("Jowers"), a past president and board member of Home Builders. (Tr. 6, 36, 40).

4. Neither Jowers Construction Company nor Jowers are named individually as a party to the instant action.

5. McIntosh, also a past president of Home Builders, is the Managing Partner of Highland Properties.   As part of his duties as Managing Partner, McIntosh oversees and manages Highland Properties' real estate development projects. (Tr. 8, 30; Plaintiffs' Exhibit 3; Defendant's Exhibit D-17).

6. Neither McIntosh nor Langdon S. Flowers are named individually as a party to this action.

7. Agunac, Inc., ("Agunac"), a Georgia private corporation in Albany, Georgia, was a private water and sewer system to certain portions of Lee County, Georgia.

(Plaintiffs' Exhibit 4).

8.   Thomas Pritchett is the principal, owner and registered agent of Agunac. (Plaintiffs' Exhibits 4-5).

9.   Defendant Lee County Utilities Authority ("Defendant Authority") is a Georgia public corporation established in 1992 by local legislation adopted by the Georgia General Assembly.  (Tr. 65; Defendant's Exhibit 1).

10.   Defendant Authority provides water and sewer service to unincorporated Lee County, Georgia.  (Tr. 44).

11.   Since 1992, Defendant Authority has built and expanded its infrastructure for providing these services through construction of new water systems, condemnation of pre-existing water systems and acquisitions of pre-existing water systems. (Tr. 45-46, 65).

12.   At all times pertinent to this action, Defendant Authority was governed by a Board of Directors ("Board") appointed by the Lee County Board of Commissioners. (Tr. 64; Defendant's Exhibit 1).

13.   The day-to-day operations of Defendant Authority are managed by Kenneth Christopher Boswell ("Boswell") as General Manager of Defendant Authority since 1995. (Tr. 43-44).

14.   During and at all times pertinent to this action, the seven-member Board normally holds an open meeting to the public once a month.   (Tr. 45-46).

15.   The Board establishes the policy for Defendant Authority, including the establishment of water and sewer tap fees.   A water or sewer tap fee is a charge to a commercial or residential lot for connection to Defendant Authority's water and sewer system. (Tr. 46).

**A.   Water Plentiful Subdivisions (October 1992 - August 1999)**

16.   Water Plentiful, Inc. ("Water Plentiful") was a Georgia private corporation

3

operating a water and sewer system to certain portions of Lee County, Georgia. (Tr. 50-51, 67).

17.    Water Plentiful contracted with the owners and developers of four, separate subdivisions to provide water and sewer services.  The four, separate subdivisions were Quail Pines, Callaway Lakes, Springdale, and Holly Plantation. (Tr. 50-51, 67; Defendant's Exhibit 2, Attachments A-D).

18.    Water Plentiful entered into contracts with Quail Pines on October 30, 1992, with Callaway Lakes on January 26, 1993, with Springdale on March 18, 1994, and with Holly Plantation on February 17, 1995.   *Id*.

19.    Defendant Authority does not charge sewer tap fees under these contracts because the subdivisions have septic tanks.  (Tr. 73).

20.    The deposit fee for all customers receiving water services, including the subdivisions under the Water Plentiful contracts in Lee County, was $100.00.  *Id*.

21.    Each subdivision had separate provisions for water tap and water meter fees. Under the Quail Pines and Callaway Lakes contracts, the water tap on fee was $1,500.00 and the water meter fee was $500.00. Under the Springdale and Holly Plantation contracts, the water tap on fee was $1,100.00 and the water meter fee was $375.00.  (Tr. 52, 68-69; Defendant's Exhibit 2, Attachments A-D).

22.    On June 4, 1997, Defendant Authority entered into a contract with Water Plentiful to acquire the subdivision contracts under which Defendant Authority agreed to comply and carry out the existing provisions of the subdivision contracts.  (Tr. 68; Defendant's Exhibit 2).

23.    On October 16, 1997, Defendant Authority promulgated  "A Resolution Establishing and For Other Purposes" expressly adopting the water tap fees, water meter fees and rates as provided under the subdivision contracts as the rate structure for the respective subdivisions.  (Tr. 68-69; Defendant's Exhibit 3).

4

24.    On August 23, 1999, Defendant Authority promulgated the "Resolution of the Lee County Utilities Authority Water and Sewer Rates of Utilities Authority Customers; to Provide for Ratification of Existing Access Charges for Water Tap Fees, Sewer Tap Fees, Water Meter Fees, and Customer Account Deposit Fees for Residential and Commercial Customers of the Authority; to Provide for Repeal of Conflicting Resolutions; to Provide for an effective Date; and for Other Purposes." (Tr. 54-55, 70; Defendant's Exhibit 4).

25.    The August 1999 resolution revised the water and sewer tap fees for all other subdivisions in Lee County and expressly incorporated the rate structure under the Authority/Water Plentiful contract for the subdivisions. *Id*.

26.    For all four subdivisions, the water tap and water meter fees remained the same as they were before acquisition by the Authority. Defendant Authority has continuously abided by the Authority/Water Plentiful contract. (Tr. 67, 73; Defendant's Exhibits 2, 6).

**B.    North Highland Crossing Subdivision (1997)**

27.    In 1997, Pritchett Real Estate Office ("Pritchett") approached Highland Properties about purchasing approximately 150 residential units and 15 commercial units located off U.S. 19 in Lee County, Georgia. ("North Highland Crossing Subdivision").   (Tr. 5-7).

28.    On November 10, 1997, Agunac sent McIntosh a letter to confirm that Agunac had sufficient capacity available to provide water and sewer services to North Highland Crossing Subdivision subject to government approvals. (Tr. 90; Plaintiff's Exhibit 9).  The letter also stated that the water meter fees would be $400.00 and there would be no water tap on fee. Additionally, the letter stated that if Agunac, Inc.'s water was not used, the sewer tap fee would be $1,000.00.  (Tr. 90; Plaintiff's Exhibit 9).

5

29.    On November 30, 1997, Highland Properties entered into an agreement with
Agunac which had as "Exhibit A" a legal description of the tract of land known as
"Land Lot 205 of the Second Land District of Lee County, Georgia."  This
agreement, recorded by the Clerk of Superior Court of Lee County on April 29,
1998, was for Agunac to provide water and sewer service to the North Highland
Crossing Subdivision units.  (Tr. 5-7, 8; Plaintiff's Exhibit 3; Defendant's Exhibit
14).

30.    Paragraph 2 of the agreement between Highland Properties and Agunac required
Highland Properties to design and bear the cost of construction and installation of
the water and sewer system on Land Lot 205 and to deed the system to Agunac
upon completion; with Agunac to grant Highland Properties the necessary
easements, egress, access and grants of ownerships as needed by Agunac.  *Id.*

31.    Paragraph 4 of the agreement also provided, in part that "[i]n the event water and
sewer are obtained from North Highland Crossing Subdivision from Agunac or its
successor, then there shall be no tap fees charged for North Highland Crossings
(sic) subdivision lots to hook up to the Agunac water and sewer system." (Tr. 30;
Plaintiff's Exhibit 3; Defendant's Exhibit 14).

32.    Paragraph 7 of the agreement provided Agunac an option to terminate the
agreement at anytime.  There was no provision in the agreement that required
notice, written or verbal, of such termination to Highland Properties.  (Tr. 17, 30;
Plaintiff's Exhibit 3; Defendant's Exhibit 14).

**C.    Authority/Agunac Negotiations (November 1996 - February 1998)**

33.    Attorneys Glenn A. Kirbo ("Attorney Kirbo") and/or Marvin Mixon represented
Highland Properties at the time the agreement was prepared and entered into.  (Tr.
15; Plaintiff's Exhibit 3; Defendant's Exhibit 14).

34.    McIntosh negotiated, signed and had personal knowledge of the agreement,

including the provision allowing Agunac to terminate the agreement at will without notice. (Tr. 30; Plaintiff's Exhibit 3; Defendant's Exhibits 14, D-17).

35. Neither Jowers nor Jowers Construction Company were parties to the agreement. (Plaintiffs' Exhibit 3; Defendant's Exhibit 14).

36. On November 27, 1996, Defendant Authority made an offer to Agunac to acquire their entire water and sewer system for approximately $6 million. Attorney Kirbo represented Agunac at the time the offer was made. (Plaintiff's Exhibit 6; Defendant's Exhibit 9).

37. Paragraph 1 of the offer stated "The Lee County Commission shall approve the purchase and enter into a contract with the [Authority] guaranteeing payment of the $6 million" in monthly installments at the rate of 6% interest over 30 years. Defendant Authority intended on entering into a binding agreement on or before December 6, 1996 and the closing to be on or before February 1, 1997. *Id.*

38. On January 15, 1997, Attorney Kirbo and Pritchett expressly committed to convey the water and sewer systems. However, Agunac conditioned its acceptance of the offer on Defendant Authority financing the systems with interest only on $4.5 million at 6% interest over 30 years and $1.5 million amortized at 6% interest over 15 years. *Id.*

39. On May 22, 1997, Boswell as General Manager of Defendant Authority stated in his letter to Peter R. Maye, Program Manager for Municipal Engineering Program, Georgia Department of Natural Resources, that Defendant Authority had decided to move forward with the condemnation of Agunac. *Id.*

40. Thomas Pritchett, president of Agunac, was notified and personally informed that Defendant Authority called a special meeting for September 10, 1997 concerning its tentative agreement to acquire the Agunac water and sewer system for approximately $6.75 million. (Plaintiff's Exhibit 5, Defendant's Exhibit 8).

41.     In the fall of 1997, the negotiations between Defendant Authority and Agunac
        were unsuccessful.   (Tr. 55-56).

42.     On February 26, 1998, Attorney Butler informed Defendant Authority that "a
        mutually-acceptable sale in lieu of condemnation cannot be reached" and, asked in
        the alternative, whether or not Agunac could pursue and receive approval for its
        plans to expand its plant capacity and customer base.  The letter also stated that
        Agunac, Inc.'s desire to expand its plant capacity and customer base was being
        legally "held hostage to [Defendant Authority's] preemptive desire to condemn
        the plant." (Plaintiff's Exhibit 6; Defendant's Exhibit 9).

**D.     Agunac Condemnation (March 1998 - July 1998)**

43.     On March 25, 1998, Defendant Authority filed a "Petition to Condemn Before
        Special Master" using its power of eminent domain pursuant to O.C.G.A. § 22-2-
        100 *et seq.* in the Superior Court of Lee County against Agunac, Inc. to acquire a
        fee simple title to its water and sewer systems for public purposes.  (Tr. 56;
        Plaintiff's Exhibit 4).

44.     Paragraph 3 of the petition stated, in pertinent part, "[t]he water and sewage
        system sought to be condemned consists of property, [including Land Lot 205],
        both real and personal, located in Lee County, Georgia.  The petition included, but
        was not limited to,"[a]ll certificates, immunities, privileges, permits, licenses,
        license rights, franchises, consents and grants, whether contractual or otherwise,
        of the condemnees which are utilized in furtherance of the operation of the water
        and sewage system."  (Plaintiff's Exhibit 4; Defendant's Exhibit 7).

45.     Paragraph 7 of the petition stated "Condemnor shows that it is desirable to have a
        judicial ascertainment and judicial supervision of all questions and proceedings
        connected with the condemnation of said water and sewer system and the
        determination of the just and adequate compensation to be first paid to the

condemnees for the taking of said system." *Id.*

46.    Paragraph 8 of the petition stated "Condemnor alleges that it, through its properly constituted authority, is willing to pay the true owners and persons having interests therein just and adequate compensation for said water and sewer system sought to be condemned and all damages to which the respective owners are legally entitled." *Id.*

47.    Agunac through its registered agent, C.B. Pritchett, Jr., was named as a respective owner whose property or property rights were to be taken or affected.  *Id.*

48.    On April 9, 1998, Agunac filed a "Verified Motion to Dismiss the Petition and Enjoin the Condemnation."  (Plaintiff's Exhibit 5; Defendant's Exhibit 8).

49.     Thomas Pritchett as the principal, owner and registered agent of Agunac, Inc. verified the motion to dismiss and swore that Agunac was prepared to convey Agunac, Inc.'s entire water and sewer system to Defendant Authority for $6.75 million at 6.75% interest.   (Plaintiff's Exhibits 5-6; Defendant's Exhibits 8-9).

50.    On April 14, 1998, Defendant Authority filed a "Response to the Motion to Dismiss the Petition." In its response, Defendant Authority stated "[i]t is not the Authority's contention to condemn any right to the customers of the water sewer system and the authority believes that their rights will be unaffected by this proceeding."  (Plaintiff's Exhibit 6; Defendant's Exhibit 9).

51.    On April 29, 1998, the Clerk of Superior Court of Lee County recorded the agreement between Highland Properties and Agunac. (Tr. 8; Plaintiff's Exhibit 3; Defendant's Exhibit 14).

52.    Jowers was named as a separate condemnee in the same condemnation petition. (Tr. 35; Plaintiff's Exhibit 4; Defendant's Exhibit 7).

53.    Highland Properties elected not to intervene in the condemnation proceeding. (Defendant's Exhibit D-17).

54.    McIntosh had actual notice of the condemnation proceeding and testified at the
proceeding as an Agunac witness that the condemnation included all contracts
related to the operation of the water and sewer systems of Agunac, Inc., including
the Highland Properties/Agunac, Inc. Agreement. (Tr. 21; Defendant's Exhibit D-
17).

55.    On June 5, 1998, an "Award of Special Master" was entered in the condemnation
action by the Special Master in the Superior Court of Lee County and the award to
condemnees in the action was in the amount of $6,994,789.00. $6,950,000.00 of
the award was to condemnee Agunac.   (Defendant's Exhibit 10).

56.    On June 18, 1998, an "Order and Judgment" was entered in the condemnation
action by the Special Master in the Superior Court of Lee County.  The entire
Agunac water and sewer system was condemned in rem and in fee simple to
Defendant Authority with an absolute and fee simple title thereto.  (Plaintiff's
Exhibit 11; Defendant's Exhibit 11).

57.    On June 18, 1998, the condemnation proceeds of $6,994,789.00 were paid into the
registry of the Superior Court of Lee County subject to the demand of the
condemnees, including Agunac. *Id*.

58.     The condemnation proceeds were disbursed by Orders of the Superior Court of
Lee County, dated June 18, 1998 and July 20, 1998. (Defendant's Exhibits 12,
13).

59.    On June 18, 1998, the Superior Court of Lee County entered an "Order Disbursing
Funds" of the Special Master Award section 1 in the amount of $6,950,000.00.
Agunac had sole interest in the award and requested disbursement in the amount
of $6,925,000.00.  A separate disbursement issued jointly to Pace Burt, Inc. and
Burt Development Company, Inc. in the amount of $25,000.00 who surrendered
to Agunac all of their claims and interest in Special Master Award section III as

well as any reversionary interest in the property subject to condemnation. (Defendant's Exhibit 12).

**E.    Post Agunac Condemnation Events (July 1998 - December 2000)**

60.    There was no appeal filed in the condemnation action by anyone and the disbursement of the condemnation proceeds terminated the case in the Superior Court of Lee County.  (Defendant's Exhibits 7-13).

61.    In November of 1998, Jowers began constructing forty-three residential units in Phase I of North Highland Crossing Subdivision.   (Tr. 36).

62.    During construction of Phase I, Jowers met with Boswell.  In that conservation, they discussed the Highland Properties/Agunac agreement that held that Highland Properties was not supposed to pay any water tap fees or sewer tap fees for the North Highland Crossing Subdivision.  Boswell told Jowers that Defendant Authority now owned the water and sewer system and that Jowers or Jowers Construction Company would have to pay the water tap fees and the sewer tap fees for North Highland Crossing Subdivision until Defendant Authority told him otherwise.  (Tr. 31-34, 58).

63.    Between December 13, 1999 and December 22, 2000, Jowers verbally complained to Boswell between December 13, 1999 and December 22, 2000 about having to pay the water and sewer tap fees.  (Tr. 95-96).

64.    At no time did Jowers file a written protest to or lawsuit against Boswell or Defendant Authority in connection with the payment of water tap fees and sewer tap fees.  (Tr. 78).

65.    On December 13, 1999, Attorney Deron Hicks on behalf of Home Builders, not for Highland Properties, sent a letter to Defendant Authority notifying the Authority of its failure to abide by the terms and conditions of the Highland Properties/Agunac agreement.  (Plaintiff's Exhibit 10).

11

66.     On November 9, 2000, Home Builders and Highland Properties filed the instant action against Defendant Authority.

67.     On December 22, 2000, Defendant Authority voted to terminate the Highland Properties/Agunac agreement. Also on December 22, 2000, Attorney James Skipper, Jr. on behalf of Defendant Authority wrote a letter to Attorney Hicks, in his capacity as attorney for Highland Properties and Home Builders, in response to Home Builders' December 13, 1999 letter between Highland Properties and Agunac, Inc. stating that it was Defendant Authority's position that the Highland Properties/Agunac agreement was unenforceable under Georgia law because the 1998 condemnation action terminated the agreement. In the event the agreement was enforceable, Defendant Authority was exercising its option to terminate the agreement at will pursuant to Paragraph 7. (Plaintiff's Exhibit 2).

## CONCLUSIONS of LAW

**A.**     **Plaintiffs bear the burden of proving that they are similarly situated to the Water Plentiful subdivisions and that Defendant has no rational basis for treating them differently from the Water Plentiful subdivisions.**

1.     The Equal Protection Clause of the Fourteenth Amendment forbids governmental decision makers from treating differently persons who are "in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). The Equal Protection Clause, however, does not forbid classifications. *Id.*

2.     When a classification does not warrant strict or intermediate scrutiny because it does not impact a fundamental right or categorize on the basis of a suspect characteristic, the disparate treatment caused by the classification must only be rationally related to a legitimate governmental purpose. Ackerman v. City of Columbus, 269 F.Supp.2d 1354, 1357-58 (M.D. Ga. 2003), *citing* FCC v. Beach Communications, 508 U.S. 307, 314 (1993).

3.      Actions based on economic classifications are given great deference under the rational relationship test. *Id.*

4.      Therefore, if a classification is of this type the Court will ask only whether it is conceivable that the classification bears a rational relationship to an end of government which is not prohibited by the United States Constitution. <u>FCC v. Beach Communications</u>, 508 U.S. at 314.

5.      Even if said classification treats similarly-situated individuals differently, the legislative or governmental action must be upheld, if there are justifiable reasons for the disparate treatment that are rationally related to a legitimate government purpose. <u>Nordlinger v. Hahn</u>, 505 U.S. at 14-15.

6.      Under the standard announced by the Supreme Court in <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432 (1985), Plaintiffs must show that they are similarly situated to members of the class who are treated differently from them. Plaintiffs bear the burden of proof in establishing that the classification, which is presumptively valid, has no rational basis for such disparate treatment. *Id.*

**B.**    **Plaintiffs do not show that they are similarly situated to the Water Plentiful subdivisions.**

7.      The Water Plentiful contracts had no termination at will provision while the Agunac contract did. *See* Findings of Fact A-22, B-32, *supra.*

8.      The Water Plentiful contracts required that pre-existing contracts be honored by Defendant Authority, the Agunac contract contained a provision permitting Agunac to terminate the contract at will, without notice to Highland. *Id.*

9.      Defendant Authority is clearly the legal successor in interest under the Agunac contract following the condemnation action, which condemned the Agunac contract among other properties. *See*, Findings of Fact, D-56, E-67, *supra.*

10.    As Agunac's legal successor in interest under the Agunac contract, Defendant

Authority was permitted to terminate the contract at will.

11.    The two contracts in the instant case, and therefore the contracting parties were not "persons who are in all relevant aspects alike."

**C.    Even if, *arguendo*, Plaintiffs had shown they are similarly situated to the Water Plentiful subdivisions, they have not met their burden of proof to show that Defendant has no rational basis for treating them differently from the Water Plentiful subdivisions.**

12.    The differences in water tap fees are a direct result of the terms of the pre-existing Water Plentiful contracts, to which Defendant was contractually bound to adhere. *See*, Findings of Fact, A-21-23, 26, *supra*.

13.    Defendant Authority is clearly the legal successor in interest under the Agunac contract following the condemnation action, which condemned the Agunac contract among other properties.  *See*, Findings of Fact, D-56, E-67, *supra*.

14.    Even if, *arguendo*, the agreement was enforceable following the condemnation action, Defendant remains Agunac's legal successor in interest under the Agunac contract as a party to the agreement.   Defendant terminated the contract by the letter sent to Plaintiffs on December 22, 2000.  *See* Fact Summary, Part E-67, *supra*.

15.    Boswell had also orally advised Plaintiffs that the fee waiver was not in effect. *See* Fact Summary, Part E-62, *supra*.

16.    Upon termination of the contract, the parties were no longer "in all relevant aspects alike."  *See* Nordlinger, 505 U.S. at 10.

17.    Plaintiffs have failed to produce sufficient evidence that would defeat such a finding; and thereby fail to satisfy their burden of proving that Defendant had no rational basis for disparate treatment.

## CONCLUSION

The Court, upon the foregoing findings of facts and conclusions of law finds that

Plaintiffs have failed to prove by a preponderance of the evidence that Defendant violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Accordingly, the Court finds in favor of Defendant and against Plaintiffs.

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

Plaintiffs shall take nothing by their complaint and Defendant shall have judgment for its costs expended in this action.

**SO ORDERED,** this  30th  day of September, 2005.

_____/s/W. Louis Sands_____
**W. LOUIS SANDS, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**